Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 221857 United States versus Nicole Amauri Rosario Sanchez. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning your honors. Raul Mariani Franco on behalf of the appellant. I will ask the court for leave to reserve three minutes for rebuttal. You may. If it pleases the court, Nicole Amauri was 15 years of age, 15, barely 15 years of age when the events in this case occurred. He had an undefined sexual organ. Apparently that's why his mother called him Nicole. Naming him Nicole caused him bullying, abuse, uh, was neglected, abandoned. He was used, he was drugged by older persons. He was, he suffered abuse all his life. He was abandoned by his mother. Trial counsel Laura Maldonado explained to Judge Bezosa that this in her 30 years career was the hardest case she has ever had to deal with. And Laura Maldonado is a seasoned attorney, death penalty, um, learned counsel. So she knows what she's talking about. In my 20 years as a criminal law practitioner, I've never read things so hard as what I read from the record. However, Judge Bezosa. Yeah, this is totally irrelevant question, but is, is Nicole a girl's name? In Puerto Rico, Nicole, Nicole is a, is a girl's name. Yes, you are. Um, Judge Bezosa apparently saw it differently. Um, the case, it's a tragic case. Uh, many lives were lost. Um, but where I think Judge Bezosa committed reversible error, uh, your honors, is that instead of taking, uh, Nicola Maury's personal circumstances, uh, his intellectual disability, uh, the facts surrounding his life as a mitigation factor, he took them as aggravating factor. If you look at the sentence, he did says that he had considered them, but he says clearly on the record that he, that he, he saw that the court needed to impose a harsher sentence to avoid future criminal conduct because of Mr. Nicola Maury's impulsiveness. Uh, the Supreme Court in Atkins. Let me ask you, because under the plea agreement, after Nicole was transferred to adult status, uh, the parties carry between 20 and 35 years. Yeah. So Judge Bezosa sentenced Nicole to 40 years. So if the parties had agreed, the top would be 35. Where's the error in him giving him 40 rather than 35? I would say, you know, procedurally, uh, he considered something that even the Supreme Court has advised should be clearly a mitigation, a mitigating factor as an aggravating factor. In Atkins, the Supreme Court stated, and Atkins is a death penalty case, that mentally retarded defendants in the aggregate attributable, attributable, attributable to the reduced capabilities and the two-edged sword that mental retardation as a mitigating factor may present just as a jury finding future dangers as an aggravating factor. The Supreme Court says that that's special risk of wrongful execution. Here, Your Honor, Judge Bezosa took Mr., uh, Nicola Maury's, uh, limited intellectual capacity. The fact that he saw him as an impulsive, uh, person that couldn't control his impulses as the reason for giving him five more years, Your Honor. He, he didn't even consider. I thought your argument was that with respect to age and intellectual disability. Yeah. There wasn't sufficient consideration of how that affected culpability in a, in reducing it. Exactly. That's different than saying that Judge Bezosa relied on those factors to explain why there was five more years. I thought that the, the way I read the sentencing transcript is, he says, perhaps that affected maturity. So, he never makes a finding one way or the other as to how it impacts culpability, which I thought you were suggesting was itself potentially error because he was obliged to account for the potential reduction in culpability that the young age of the defendant had. And I agree. What I'm saying, I'm high, I'm highlighting what he said as evidence that he didn't consider, uh, the fact that children are constitutionally different. The lack of maturity, the underdeveloped sense of responsibility that leads to recklessness, impulsivity, and headless risk taking. And am I right? That's in Roper. When I understood it, he then says, accordingly, the, um, after discussing Miller, I thought you were, were suggesting that, to Judge Helpe's point, if you start from the baseline of the guideline sentence, which is life, the concern is that by not taking account of a certain factor, we can't know if he had taken account of that factor, how far below he would have gone since we know he gave a variant sentence, even a downward sentence, even without giving. So, it's higher than the recommended sentence, but it's lower than the maximum, and what he's starting with is the guideline sentence, which is what he's supposed to start. But the court, you are confined to what Judge Bezos explained in the sentencing transcript. And if you look at the transcript, there's no dispute as these mitigating factors exist. So, Judge Bezos is explaining why he's going to go over, over the party's recommendation based on recklessness, lack of maturity, and those are factors that should be mitigating factors, not aggravating factors. And that has been stated since 2002 in the Supreme Court case of Atkins. It was also stated in Roper. So, even though this is not a death penalty, it was not at the moment a death penalty eligible case or a death penalty case, the court had an obligation, a duty to examine Ms. Nicola Maury's circumstances, tragic circumstances as mitigating factors, particularly his intellectual disability. But I thought the way it went was Miller. He starts with Miller. And Miller explains why he can't give the guideline sentence, which is life. Exactly. And he says accordingly, and then he gets 40. But there's, I guess, as I read your brief, I thought you were suggesting, but there's no explanation apart from saying, I'm not going to give life because Miller precludes it, as to why he's setting the sentence as high as he is, notwithstanding the age of the defendant. May I respond?   Miller, Roper is cited in Miller. And our argument, the trust our argument is that Judge Bezosa didn't consider that exactly. He, of course, he was not giving a life sentence, and that's Miller. But beyond a life sentence, minors and particularly intellectual disabled minors are different, constitutionally different. And Judge Bezosa didn't make any difference. The court compares the sentence to the only defendant that had been sentenced with two murders also. It was 20-something years. Why give Nicola Maury 40 years? The answer is because Judge Bezosa mixed what should have been a mitigating factor and converted it to aggravating factor to take our client for the, beyond not considering Ms. Maldonado's 20 years, it doubled that to 40 years. Yeah, just one question. And just to pin this down, your argument goes to mitigation and not culpability. Are you making an argument as to both or a combination of the two? In other words, are you saying that his circumstances goes to his culpability for the strictly in regard to whether there was consideration of mitigating factors? Yeah, I understand from the brief, which I didn't wrote and I'm substituting counsel. From the brief that was filed, the opening brief, my submission will be that we are, that Nicola Maury's contention is regarding mitigating factors. He did accept responsibility. He went, he had multiple evaluations. So if the court is considering consent for pleading, that's not in our opening brief. What's in the brief, it's an argument under Miller versus Alabama and its application to a non-death penalty case with regards to what I stated here before. Counselor, let me ask you. What your client is requesting in the brief is that he, there'll be a resentencing and that these factors be considered. So, but in theory, Judge Pesosa can reconsider these factors, revisit, further explain, but your client could be sentenced anywhere from 20 years, but all the way to 40. Judge Pesosa could still impose the same sentence. Am I correct? That's correct, Your Honor. So you're not saying that as a matter of law, the sentence has to automatically be below 40. What you're saying is if it's going to be 40, there has to be an explanation or considering those factors, it could be lower, correct? What we're saying is that the court has to explain why it went beyond the party's recommendation and the explanation it gave is an unconstitutional explanation. It's basically turning a mitigating factor into a aggravating factor. Just so I'm clear, you also are making a separate substantive reasonableness challenge. Yeah. To the... And a procedural challenge as regards to... And the procedural challenge would result in, just as Judge Helpy is saying, is a resentencing, which in theory could result in the same way. Yeah. Both arguments will have the end result the same. That will be for a resentencing. The court has to explore whether the case should be, or the resentencing under Judge Pesosa, given what he stated, and that will be for the court to decide. Okay. Thank you, counsel. Attorney Murphy, please come up and introduce yourself on the record to begin. Good morning, Your Honors. Assistant United States Attorney, Sean P. Murphy, on behalf of my client, the people of the United States of America. May it please the court. Over a period of only 10 days, Rosario Sanchez participated in five different violent and unprovoked attacks on the innocent and unsuspecting people of Puerto Rico. During four of these five attacks, Rosario Sanchez arrived with his crew, and during these carjackings and robberies, Rosario Sanchez shot a gun, aiming deliberately and callously at people that were out enjoying a meal or celebrating their birthday. Mr. Murphy, we understand how horrendous the crimes were, but it would be helpful if you would address the arguments made about mitigation. Yes, Your Honor. And as Your Honor is well aware, in any depiction of Lady Justice, there's a scale, and the scale has two sides, not just one. And so the issue here is not just whether there are mitigating factors, because of course there are. That was developed. The issue is what the district court said and how the district court did it. So if you could answer, what was the, what is your view? You've heard the contention from your opponent that the district court did not adequately consider certain mitigating factors, and in fact, the contention is relied on them as aggravated. What is your response to that? My response would be to turn to exactly what the district court did say in the sentencing transcript. It's page 18, beginning on line 18, and it says the court has also considered the other sentencing factors set forth in Title 18, United States Code, Section 3553A. Now, I recognize that that is not enough, but it's a bit of a catch-22 whenever judges get to that point, because if they don't say they've considered the factors, and that's used against them, if they say that they did, it's not necessarily enough. It's given some weight. What's the catch-22? That it's argued against them if they don't say it, but then also if they do. It's not argued against them if they do say it, it's argued against them if that's all they say. Which fortunately here it's not. Okay, so what else did he say? He goes on for two pages, two full pages of the transcript, and describes the aggravating factors. I won't go into those, because as Judge Thompson has expressed, the court and the record make these explicitly clear. The key... Well, you should go into them, because I mean, the aggregating factors obviously are the nature of the crime, but what else are you saying the district court pointed to as far as aggregating factors? So, to directly answer that question, the district court said, and I quote, beginning on page 21, line six of the sentencing transcript, the court finds that neither sentence proposed by either of the parties reflects the seriousness of the offenses, or promotes respect for the law, or protects the public from additional crimes by Mr. Rosario, and does not address the issues of deterrence and punishment. Pursuant to the provisions of the sentencing guidelines section 5H1.1 and 5H1.3, which are parts F and part D of the pre-sentence investigation report, which the court reviewed and both parties agreed was correct, the court has considered Mr. Rosario's age, 15 years old at the time of the offense, mental conditions, those being his low IQ, an IQ of 61, emotional conditions at the time of the offense, as relevant in determining his sentence. So, are you saying that those, you were answering the question about what the aggregating factors are, are you saying that those are mitigating? No, I'm sorry, those are mitigating factors, and the court is expressly recognizing them as mitigating factors, because how can we tell? We can make fair inferences from the body of the record, and the body of the record is that in the three psychological evaluations, the first one, which was ordered by the government, each one of those discusses each of those factors as mitigating factors. The pre-sentence investigation report goes at great lengths to discuss the age, the mental conditions, the emotional conditions, the familial conditions, make no mistake, Mr. Rosario Sanchez's life is tragic. It's heartbreaking, it's devastating. But so, too, is the fact that lives were needlessly, viciously, callously taken. Family lines cut off in cold blood. But again, I apologize, it's easy to lose one's thread in the ethos of this case. To return to the question, we can look to defense counsel's words at the district court level. She begins by saying, I don't want to unnecessarily, and I'll go ahead and quote, I don't want to waste the court's time repeating myself in addition to what I said in my sentencing memorandum. So she's not even going to take the time to go back into and reiterate those deeply empathic factors that should and did inform this court's decision. The judge reads, I did it for many years, we read the sentencing memorandum. So it's not a non-common practice to say, judge, we've read our memo, we don't have anything else to add because it's all there. So the judge is considering that. There's no rule that the attorney has to reiterate from A to Z. As a matter of fact, the number of sentencing hearings per day it's a lot. So you can move along, the judge has to have read it, don't rehash it. Of course, and that's, as your Honor is well aware, the common practice in the district court level here in Puerto Rico. The point being that the judge did go on to after that, he went on to say, and the point is that the record establishes the mitigating factors as recognized by defense counsel, as recognized by the PSR, as recognized by the government, as recognized by the court. The court then said, and this is picking up again from page 21, he was 15 years old when he committed the offenses and perhaps lacked maturity and a sense of responsibility. Mr. Rosario's long-standing history of abuse. What do you make of the word perhaps? I'll give it its common meaning and say that it's likely that he... Maybe, maybe he did, maybe he didn't. Is that a problem? In other words, one of the ideas behind having mitigating and aggravating is you're supposed to consider them for what they are and when you're dealing with a 15-year-old, which at the time the district court says 16 and afterwards it's correct, it says 15. Why is it not of concern that the judge doesn't seem to take the age as bearing on in any clear way the maturity of the defendant? So I will respond to your Honor's question, but I need to back out for just a moment. And as a side note, thank Judge Thompson for your opinion in Colon Cordero because I think that is very helpful in the analysis of this case. The key distinction between those two being that Colon Cordero involved an upward variance. This is, as your Honor, Chief Judge Barron recognized, a downward variance from the guideline sentence. All parties agreed that the correct guideline... He says the reason, if I follow the reasoning of the district court, at least one way to read it, he goes through Miller. The guideline sentence under the guidelines would be life. Miller, he says, makes it I can't give life. So he says accordingly, I'll give 40 years. That's different than suggesting in light of the lack of maturity of this particular child, given this particular child, the person's age, this defendant. I'm taking that into account. Here's why I'm giving the sentence. So the concern is that the maturity of the child wasn't considered in determining it. Instead, it was just an application. Miller proposes the guideline sentence. So I'll just pick something that I think accords with Miller. So, and again, if this were an upwardly variant sentence, I think that this kind of attention to words and their usage would perhaps be a little more probative of the central issue. But the guideline is life. So it can't upwardly vary on a case like this. So his only option was to go down. I respectfully disagree. Miller didn't preclude life without the possibility of parole. It only precludes that it can't be mandatory. So he could have, there seems to be, well, he could have given life without the possibility of parole. That was an option that was on the table for the district court judge. He agreed with the parties that a downwardly variant sentence was appropriate. And this court has said in Rivera-Jerena. Where do you get that from? Because that's why I didn't quite follow in the sentencing transcript when the district court refers to Miller and then says accordingly. It sounds like accordingly because of Miller, am I misreading it? I think you're right that, in fact, Miller did not require that he couldn't have imposed as a discretionary matter a life sentence. But he seemed, the district court, as I read it, seems to be saying, Miller tells me I can't do this. So I'll pick 40. And the concern then is district court didn't think, oh, now that I have discretion, do I want to give it in light of the lack of maturity of the defendant, et cetera? So there is a lack of clarity in whether or not the district court judge knew that that was an option for him on the table. However, the question for me then becomes, is that a reason to then send it back to the district court level where the district court judge there could take into account the 3553A factors, tick all the boxes for procedural and substantive reasonableness, and then impose a sentence of life without the possibility of parole? It's, the question is whether there is enough on the record to justify. And as this court stated in Rivera-Herena, it's loath to disrupt downwardly variant sentences. I get that this is a pretty unique circumstance where there is no option for an upward variance. But I do believe that the factors here were weighed carefully. They were balanced. They were considered in the district court carefully and accurately crafted a sentence that this court should now affirm. Counsel, one last question. I know it was before a different judge, but the other co-defendants who were adults received, at least the ones I have, Omar Rivera, Moyet, 216 months, Derek Munoz, 360, Edwin Gomez-Caraballo, 312. Is that something that, if we were to remand, that the judge should also consider? Because I know opposing counsel mentioned that, and it does seem a bit awkward. I know it's a different judge, though. It was a different judge. So there were eight co-defendants, or there were eight defendants total in this prosecution and investigation. One other defendant, which was actually Nicola Maury's brother, and also a juvenile, went to Judge Bezosa. And one point of order, if I may. My name is, of course, John Patrick Murphy, so I can't speak on naming conventions in Puerto Rico. But it seems like in this family, that was a family name. His father's name was Nicole. His twin brother's name was also Nicole. This was not any slight on his ambiguous genitalia, or it does not appear to be. I don't think that's a fair reading of the record, or a source of insult towards the defendant, given that his father and brother also carried that same name. But to directly answer Your Honor's question, of the eight defendants, four of them received guideline sentences. Three of them were low-guideline sentences. One of them was mid-range guideline. The four others also received downwardly variant sentences. They were before, as Your Honor correctly recognized, before a different judge. And the fact of the matter is, just by having this conversation, I'm introducing into the record facts for this court's consideration. There was no attempt to build out what the other defendants did, what their role was. Everything like focused on his personal circumstances, correct? Right. Okay, so there was not a comparative exercise. Just another question. Was he the first one to get sentenced, or? He was not. There were one or two that had been sentenced before him, and I believe they received downwardly variant sentences as well. And so they received lower sentences? They received lower, by like month count? Yes, they received lower sentences. I believe this defendant did receive the highest month count, but that's also commiserate with his actions, which were far and away the most horrendous of any of his co-defendants. But again, I don't necessarily want to engage in that comparative exercise. Brother counsel says that we should view the district court's wording as saying that his personal circumstances were aggravating factors. Can they be viewed as both aggravating and mitigating at the same time? I mean, for instance, his age presumably is a maturity issue that he can grow out of as he gets older. His mental disability might not be. And so if that is something that's contributing to his impulsivity, is it fair for the court to take that into consideration? And think, I mean, so when the court said that a specific deterrence, is it air, even in light of Miller, which to do with maturity, but to take that into consideration as an aggravating factor? I mean, it's sad. It's extremely sad. And this is both fortunately and unfortunately not a case where there's a dearth of the record. Three psychological evaluations, well-developed throughout the sentencing memorandum, well-developed throughout the facts of the case and at the sentencing hearing itself. And your honor is absolutely spot on that age, mental circumstances, emotional circumstances can be both mitigating and aggravating factors. And based on the fully developed record, it's clear that the court had this before them. The district court stated that they read the briefings, the filings. All three psychological reports were attached to the defense counsel's sentencing memorandum. The court said it reviewed them, the PSR, part F and part G. The court, it was well-developed and mentioned by the probation officer that those factors could be considered and should be considered by the court as in the crafting of the sentence. And the sentence itself, again, a downwardly variant sentence, yes, it was above what either of the parties asked for. But to go back to the scale metaphor, there was a lot of weight on both sides. And it tipped slightly in one direction, that being the mitigating factors, because he did receive a downwardly variant sentence. And just because it wasn't as low as the defendant wanted is no cause to overturn this carefully reasoned sentence. And counsel, let me ask you one last question, which I'm also going to ask the opposing counsel, and you don't have a chance to respond. If we were to remand this case, is it possible for the district court upon resentence to also consider what the other co-defendants received and take that into account, which it didn't do before? Or would it be bound by the record as it now stands? I mean, to be perfectly honest with the court, I'd need to dig a bit more into the case law to see if there's any legal restriction to the court, considering what's happened to the other co-defendants since then. But, you know, life changes, circumstances change. And I don't think that there would be anything unjust to the court looking at all the... We want courts to... Because it's used to go up, so it should also be considered both ways. Right. We want courts to make rulings and findings based on the whole body of information that is available to it. And the reason why this Nicole went to Judge Mezosa is because it starts as a juvenile proceeding and there's a transfer to adult status. That's why it's not part of the original indictment with everybody else. And that's why he ends in a separate case, not along with the others. Okay. Yes, Your Honor. Thank you. Thank you. Thank you, Counsel. Attorney Mariani-Franco, please come up and reintroduce yourself on the record. You have a three-minute rebuttal. Raul Mariani-Franco on behalf of the appellant. I would like to address Judge Thompson's questions regarding mitigating and at the same time aggravating a fact. Of course, it can be done. But this is a court of record and there's nothing on the record to support the circumstances of my client being aggravating. The government didn't file a sentencing memorandum. If the court goes to a sentencing transcript, you will see the prosecutor, Mr. Godfrey, basically explain the facts of the case. So there's no evidence to support a determination by the court that, for example, his age can be, or his lack of intellectual capacity will be the source of problems. In fact, Judge Bezosa says on the sentencing that the source of his impulsivity and aggression is the abuse he suffered. So I would say that on the facts of this case, that shouldn't apply. With regards to the matter of disparity, there's two important matters. This court can remand on that issue alone. The government has argued in their reply brief that counsel for the defendant didn't expand. But if the court looks at the sentencing memorandum, I'm setting appendix page 39 to 40. The counsel for my client explained the plea agreements and their roles. For example, Omar Rivera Mojet was the leader of the gang. Derek Munoz was the supervisor of the gang. This was never contested because the government never challenged any of these arguments, any of these proffers. But these same defendants, Omar Rivera Mojet, received 216 months. Derek Munoz was the supervisor 360 months. So, and what Judge Bezosa did, and the government tries to justify this as addressing the disparity argument, at the end of the sentence, Judge Bezosa says in one-liner, whether a sentence is reasonable or not depends on the facts of each case. That's all he said regarding disparity. That doesn't comply with RITA. It doesn't comply with this court's ruling, U.S. versus Robles-Alvarez. And it surely doesn't comply with the recent opinion issued by this court in Cordero Velazquez in basically December of last year. The court stated in that case, when a district court fails to address or acknowledge a defendant's argument relating to a sentencing disparity between the defendant and the co-defendant, there's procedural error. In that same case, citing Robles, the court states, where the defendant presents non-frivolous reasons for imposing a different sentence, the judge will normally go further and explain why he rejects those arguments, citing RITA. Judge Bezosa didn't do that. So this case should be remanded. Was this the only juvenile in the group? Was this the only juvenile defendant in the group? I cannot say, because the juvenile files are sealed and there's nothing on the record I have that can provide me the exact age of his brother, for example. But the other defendants... The other defendants were all over 18 at the time. Yeah, they're adults, as per Laura Maldonado's sentencing memorandum. Well, they were indicted. They're definitely adults. Your client has the information or the juvenile proceeding files, the information with the transfer because he's a juvenile. I think his brother maybe was a minor because I don't have access to his file. Okay, thank you. Thank you, counsel. That concludes arguments in this case.